# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|                                        |   |               |
|----------------------------------------|---|---------------|
| S.B. and D.B.,                         | : | CIVIL ACTION  |
| Plaintiffs,                            | : |               |
| v.                                     | : | No. 13-1463   |
| UNITED OF OMAHA LIFE INSURANCE CO.,    | : |               |
| Defendant.                             | : |               |

## MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                      **June 13, 2013**

Presently before this Court are Plaintiffs, S.B. and D.B.'s[1] ("Plaintiffs"), Motion for Remand Pursuant to 28 U.S.C.A. § 1447(c), and Defendant, United of Omaha Life Insurance Co.'s ("Defendant"), Motion for Judgment on the Pleadings. For the reasons set forth below, Plaintiffs' Motion is denied and Defendant's Motion is granted.

## I. BACKGROUND

### The Parties

Plaintiffs are minor children who reside in Philadelphia, Pennsylvania. (Compl. ¶¶ 1-2.[2]) Defendant is a citizen of the state of Nebraska with a principal place of business in Omaha, Nebraska. (See Doc. 1, Notice of Removal.) Defendant is a licensed insurance company, registered and incorporated within the Commonwealth of Pennsylvania, which maintains insurance brokers and agents. (Compl. ¶ 3.) Defendant's business operations extend throughout

---

[1] As Plaintiffs are minor children we will refer to them by their initials.

[2] When citing the Complaint, we are specifically referencing the Plaintiff's Complaint which was filed in Pennsylvania state court and can be found at Doc. 1 Ex. A.

the state of Pennsylvania and, in particular, Philadelphia county. (Id.)

**The Application and Subsequent Events**

On or around October 1, 2011, Steven L. Bennett, Jr. ("Bennett"), the father of Plaintiffs, submitted an application for the purchase of a life insurance policy (the "application") to Defendant. (Id. ¶ 5.) The application included a number of health related questions including a specific question asking whether Bennett "ever (a) received care or treatment for, or (b) been advised by a member of the medical profession to seek treatment for, or (c) consulted with a health care provider regarding . . . (e) Diabetes with onset before age 50 or with vascular or renal complications?" (Id. ¶¶ 10-11.) Bennett answered "NO" to the question. (Id. ¶ 11.) The application notes that if Bennett had answered "YES", he would not have been eligible for coverage under this application. (Compl., Ex. A at 20.)

In the final section of the application titled "Agreement," the document asserts that "the statements and answers in the application are the basis for any policy issued by United of Omaha (Defendant), and no information about them will be considered to have been given to United of Omaha (Defendant) unless it is stated in the application." (Compl., Ex. A at 21.) Directly above the space for an applicant's signature is a line that reads, "I have read and understand . . . (the application) . . . and approve of all my answers as recorded." (Id.) Though the record is not clear as to who filled out the application, it is uncontested that a completed application was signed by Bennett. (Id. ¶ 16.)

Relying on Bennett's responses to the inquiries in the application, Defendant issued Policy No. BU1359060 (the "policy") on October 13, 2011. (Def.'s Mot. J. on the Pleadings 2.) The policy had a face value of $50,000 with Plaintiffs listed as the sole beneficiaries. (Comp.

¶ 7.)

Bennett died on February 8, 2012. (Id. ¶ 6.) Bennett's death resulted from an intracerebral hemorrhage, which Plaintiffs claim has no known relation to diabetes or elevated blood sugar levels. (Id. ¶ 18.) Sometime after Bennett's death, Plaintiffs, as sole beneficiaries of the policy, submitted a claim to Defendant for the $50,000. (Id. ¶ 8.) Since Bennett's death was within two years of the issuance of the policy, Defendant commenced a claim review. (Def.'s Mot. J. on the Pleadings 2.) During this review, Defendant received medical records indicating that Bennett was diagnosed and treated for diabetes prior to his fiftieth birthday on May 30, 2010. (Compl. ¶ 14; Def.'s Mot. J. on the Pleadings 2.) These records demonstrate that on December 31, 2009, Bennett was diagnosed with diabetes at Parkside Family Medical, and was later treated at Lankenau Hospital for diabetes and elevated blood glucose levels on January 5, 2010 and February 10, 2010. (Def.'s Mot. J. on the Pleadings 2.) In light of this newfound information, Defendant rescinded the policy and refunded the premium payments. (Id.) Further, Defendant notified Plaintiffs by letter dated January 8, 2013, that the insurance proceeds would not be paid due to the material misrepresentation made by Bennett in the application. (Compl. ¶ 9.)

## II. PROCEDURAL HISTORY

Plaintiffs, through their court appointed guardian, Nolvira Curry, filed suit against Defendant in the Court of Common Pleas of Philadelphia County on February 19, 2013. (See Doc. 1.) Plaintiffs' claims include breach of contract and bad faith. (Id.) On March 20, 2013, Defendant filed a Motion to Remove this case to federal Court. (Id.) Subsequent to this Motion, the matter was assigned to this Court. (Id.) Plaintiffs filed a Motion to Remand to State Court on April 1, 2013, and Defendant timely submitted a Response in Opposition ten days later. (See

Docs. 4, 6.)

On April 16, 2013, Defendant filed an Answer to Plaintiffs' Complaint. (See Doc. 8.) Eight days later, Defendant filed a Motion for Judgment on the Pleadings to which Plaintiffs responded. (See Doc. 11.)

## III. DISCUSSION

At issue before this Court are Plaintiffs' Motion to Remand and Defendant's Motion for Judgment on the Pleadings. We will address each Motion in turn.

### A. Plaintiffs' Motion to Remand

A civil action may be removed from state court to federal district court if the federal district court has jurisdiction. 28 U.S.C. § 1441(a). District courts have original jurisdiction over all civil matters between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). After removal, the federal district court must remand the case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c).

Plaintiffs claim that this Court lacks subject matter jurisdiction because the insurance policy is only for $50,000, which falls below the necessary $75,000 threshold. Accordingly, Plaintiffs request that this case be remanded to Pennsylvania state court pursuant to 28 U.S.C.A. § 1447(c). We do not agree.

The general rule in federal courts has long been that in order to decide the amount in controversy a court must look at the complaint. Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 353 (1961); Dolin v. Asian American Assoc., Inc., 449 F. App'x 216, 218 (3d Cir. 2011) (citing Horton, 367 U.S. at 353) ("We discern the amount in controversy by consulting the face of the

4

complaint and accepting the plaintiff's good faith allegations"). In determining whether the monetary amount is sufficient to provide jurisdiction, the Court looks at the facts that exist at the time of the filing of the complaint. Dolin, 449 F. App'x at 218 (citing Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989)). The district court must determine the amount "not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated." Angus v. Shiley Inc., 989 F.2d 142, 146 (3d Cir. 1993). If, from the face of the complaint, it is a legal certainty that the plaintiff cannot recover $75,000, or it appears to a legal certainty that plaintiff is not entitled to that amount, the case is barred from proceeding in federal court due to the failure to satisfy the amount in controversy requirement. Frederico v. Home Depot, 507 F.3d 188, 194 (3d Cir. 2007).

Here, looking solely at the Complaint, it is evident that a "reasonable reading" of the values sought from Plaintiffs' claims satisfy the jurisdictional amount. Angus, 989 F.2d at 146. In this litigation, Plaintiffs seek $50,000 from the proceeds of the policy, punitive damages, treble damages, and attorneys' fees. Prof'l Cleaning & Innovative Bldg. Servs., Inc. v. Kennedy Funding, Inc., 245 F. App'x 161, 163 (3d Cir. 2007) (citing Suber v. Chrysler Corp., 104 F.3d 578, 585-87 (3d Cir. 1997) (treble damages and attorneys' fees included in jurisdictional computation)); Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1046 (3d Cir. 1996) (punitive damages are properly considered in the amount in controversy analysis). In consideration of these demands, it cannot be said to a legal certainty that, from the face of the Complaint, Plaintiffs seek less than $75,000. In fact, punitive damages alone have been found to satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that such damages cannot overcome the threshold amount. Huber v. Taylor, 532 F.3d 237, 244 (3d Cir.

5

2008); Johnson v. State Farm Life Insur. Co., 695 F. Supp. 2d 201, 207 (W.D. Pa. 2010).

Finally, we note that Plaintiffs, in their Motion to Remand, allude to a willingness to reduce their demand to under $75,000 in order to return to state court.[3] (Pls.' Mot. for Remand 6.) However, in analyzing Plaintiffs' Motion we are confined solely to the Complaint at the time it was filed. See Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002); Steel Valley Auth. v. Union Switch Div., 809 F.2d 1006, 1010 (3d Cir. 1987). No such offer to cap the damages exists within the Complaint, and Plaintiffs' post-removal attempt to limit their claims does not affect the amount in controversy analysis. DiBattista v. Dixon, No. 09-3086, 2009 WL 2245060, at *2 (E.D. Pa. July 27, 2009) (citing Angus, 989 F.2d at 145).

### B. Defendant's Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c) a party may move for judgment "after the pleadings are closed but within such time as not to delay the trial." Fed. R. Civ. P. 12(c). In moving for Judgment on the Pleadings, the moving party must show that no issues of material fact exist and that judgment should be entered in its favor as a matter of law. See Bayer Chemicals Corp. v. Albermarle Corp., 171 F App'x 392, 397 (3d Cir. 2006); Jablonski v. Pan Amer. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988). "In evaluating a Rule 12(c) motion, a court must view the pleadings in the light most favorable to, and draw all inferences in favor of, the nonmoving party." Jablonski, 863 F.2d at 290. The court "need not accept as true legal conclusions or unwarranted factual inferences." Id.

Subsequent to filing an Answer, Defendant properly moved for Judgment on the

---

[3]Plaintiffs assert that they attempted to gain acquiescence from Defendant on this matter, but that Defendant refused. (Pls.' Mot. for Remand 6.)

Pleadings. Defendant's Motion is predicated on its argument for rescission of the insurance policy due to Bennett's material misrepresentation in the application that he was not diagnosed or treated for diabetes prior to the age of fifty. If the policy is rescinded, Plaintiffs' claims stemming from it are not actionable as there is no lawful contract. See Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 130 (3d Cir. 2005) (citing Reformed Church of Ascension v. Theodore Hooven & Sons, Inc., 764 A.2d 1106, 1109 (2000)); Bonsu v. Jackson Nat'l Life Ins. Co., No. 05-2444, 2010 WL 55714, at *6 (M.D. Pa. Jan. 4, 2010).

Under Pennsylvania law an insurance policy is void *ab initio* for misrepresentation when the insurer establishes three elements: (1) that the representation was false; (2) that the insured knew that the representation was false when made or made it in bad faith; and (3) that the representation was material to the risk of being insured. See Burkert v. The Equitable Assurance Society of America, 287 F.3d 293, 296-97 (3d Cir. 2002) (citing Matinchek v. John Alden Life Ins. Co., 93 F.3d 96, 102 (3d Cir. 1996)); New York Life Insur. Co. v. Johnson, 923 F.2d 279, 281 (3d Cir. 1991). We find that Defendant has established all three of these elements and the insurance policy was void *ab initio*.

### (1) Falsity of the Representation

There is no dispute that the representation made by Bennett in the application was false. Plaintiffs concede and the record corroborates the fact that Bennett was diagnosed with diabetes before the age of fifty. (See Compl. ¶ 14.)

### (2) Knowledge of False Representation or Bad Faith

However, Plaintiffs contend that due to the confusing nature of the question and the time period between diagnosis and the signing of the application, Bennett's answer was not

intentionally false nor made in bad faith.

We begin by analyzing the language of the question in the application. The text of the question at issue reads,

> Has the Proposed Insured ever (a) received care or treatment for, or (b) been advised by a member of the medical profession to seek treatment for, or (c) consulted with a health care provider regarding . . . (e) Diabetes with onset before age 50 or with vascular or renal complications?

(Compl., Ex. A at 20.)

Plaintiff contends that the question "is so convoluted with so many different sub-parts and variables an honest mistake could have been made." (Pl.'s Resp. in Opp'n 8.) We do not agree. The question, though broken into subparts, clearly asks whether the applicant has been diagnosed, treated or consulted with a health care provider regarding diabetes before the age of fifty. Thus, we do not find that question is convoluted or ambiguous.[4]

The record affirms that Bennet made a false representation in the application he signed on October 1, 2011. Specifically, the record evidences that: Bennett was diagnosed with diabetes on December 31, 2009, and he was treated at Lankenau Hospital for his diabetic condition on January 5, 2010 and February 10, 2010. In light of this evidence, we cannot say that Bennett made an "honest mistake" in answering this query in the negative. Rather, we find that Bennett knowingly made a fraudulent misrepresentation. See Kizrian v. United States Life Ins. Co., 119

---

[4] In Baer v. Union Security Life Ins. Co., No. 07-473, 2008 WL 4671165 (W.D. Pa. Oct. 21, 2008), the Court found a question similar to the one at issue in this case to be unambiguous. The question asked whether, in the five years preceding: (1) applicant had heart disease; (2) applicant had been medically advised that he had heart disease; or (3) applicant had been treated for heart disease. The Court found that if the applicant had heart disease or was treated for it he should have answered yes to the question. Id. at *8.

A.2d 47, 49 (1956) (stating that if statements made by the insured were false and he knew them to be false when made, this constitutes fraud).

The Supreme Court of Pennsylvania defines bad faith as an action undertaken with the purpose of fraud, dishonesty, or corruption. See Thunberg v. Stause, 545 Pa. 607, 616 (1996); Frick v. McClelland, 384 Pa. 597, 600 (1956). With regards to our finding that Bennett fraudulently misrepresented that he was not diagnosed with or treated for diabetes in order to maintain eligibility for the policy, we hold that the misrepresentation was made in bad faith.

Finally, Pennsylvania law allows for an inference of bad faith in this case. See American Franklin Ins. Co. v. Galati, 776 F. Supp. 1054, 1060-61 (E.D. Pa. 1991); Northwestern Mut. Life Ins. Co., 430 F.3d at 130. In American Franklin Ins. Co., where the plaintiff reviewed and signed an application that contained misrepresentations, the Court inferred bad faith as a matter of law. American Franklin Ins. Co., 776 F. Supp. at 1060-61. The Court further found that whether the plaintiff filled out the application was immaterial, as the focus was solely on plaintiff's signature verifying the accuracy of the statements. Id. In our case, directly above Bennett's signature is language affirming that Bennett read, understood and approved of all the answers in the application. (Compl. Ex. A at 21.)

Furthermore, an inference of bad faith is applicable where, such as in this case, the unreported medical condition of the insured was "so serious and so recent that he could not have forgotten it." Northwestern Mut. Life Ins. Co., 430 F.3d 121 at 130 (quoting Evans v. Penn. Mut. Life Ins. Co., 186 A. 133, 138 (1936)). In Piccinini v. Teachers Protective Mutual Life Is. Co., 316 Pa. Super. 519, 531 (Pa. Super. 1983), the Court found plaintiff's testimony that he did not have arthritis, even though he had suffered and sought treatment for the condition, to "be so

9

incredible that bad faith must be inferred as a matter of law." We see Piccinini as analogous to the case before this Court and hold accordingly.

**(3)     Materiality of the Misrepresentation to the Risk of Being Insured**

Courts applying Pennsylvania law have long held that inquiries in applications for life insurance regarding prior medical conditions and treatments are material to the risk. See Baer, 2008 WL 4671165, at *9; Baldwin v. Household Ins. Servs., No. 02-6949, 2003 WL 21960718 (E.D. Pa. June 23, 2009) (citing Shafer v. John Hancock Life Ins. Co., 410 Pa. 394, 398-99 (1963) (holding important information as to one's health is material to the life insurer's risk)); Freedman v. Mutual Life Ins. Co. of New York, 342 Pa. 404, 409 (1941).

Without citing to any relevant judicial precedent, Plaintiffs argue that Bennett's misrepresentation was not material because the policy never states that a policy would not be issued at another higher premium. (Pls.' Resp. in Opp'n 7.) Further, Plaintiffs baldly contend that "Defendant will have to show and prove they have absolutely no policies of insurance issued to anyone under the age of 50 who maintains diabetes." (Id. at 8.) However, in Plaintiffs' attempt to confine the materiality determination, they misconstrue the law. Burkert and New York Life clearly enunciated "[a] misrepresented fact is material if being disclosed to the insurer it would have caused it (the insurer) to refuse the risk altogether or to demand a higher premium." Burkert, 287 F.3d at 298 (quoting New York Life, 923 F.2d at 281). Accordingly, Defendant is only required to show one of two scenarios: (1) that they would have denied coverage altogether due to the heightened risk from diabetes, or (2) that they would have demanded a higher premium in light of this risk. (Id.) The application that Bennett signed manifestly states that if he answered "Yes" to having diabetes before the age of fifty, Bennett

would not be eligible for coverage under this particular application. (Compl., Ex. A at 20.) Thus, it is apparent from the face of the application that listing diabetes amongst the disqualifying conditions connotes that it was a material fact because it would have resulted in the refusal of Defendant to offer the policy. See Matinchek, 93 F.3d at 102 (finding misrepresentations that plaintiff didn't have diabetes were likely material to the risk of being insured where application required its disclosure). In sum, ample legal precedent warrants a finding of materiality in this case. Burkert, 287 F.3d at 298 (quoting New York Life, 923 F.2d at 281).

In sum, viewing the pleadings in the light most favorable to, and drawing all inferences in favor of, Plaintiffs, we conclude that Bennett knowingly provided a false response in the application, and this untruthful response caused Defendant to issue a policy to Bennett that would not have been issued had Bennett answered truthfully. As a result of the life insurance policy being issued because of a knowing falsehood, Bennett's policy was void *ab initio*. See Burkert, 287 F.3d at 296-97 (citing Matinchek, 93 F.3d at 102); New York Life Insur. Co., 923 F.2d at 281. Stripped of a valid life insurance policy, Plaintiffs' claims for breach of contract and bad faith must fail. See Northwestern, 430 F.3d at 136 (citing Reformed Church of Ascension, 764 A.2d at 1109) ("It is axiomatic that a breach of contract claim may not be maintained in the absence of a valid contract"); Bonsu v. Jackson Nat'l Life Ins. Co., No. 05-2444, 2010 WL 55714, at *6 (M.D. Pa. Jan. 4, 2010) (dismissing claims for breach of contract and bad faith where insurance policy was void *ab initio*). Consequently, Defendant's Motion for Judgment on the Pleadings is granted.

## IV. CONCLUSION

For the aforementioned reasons, Plaintiffs' Motion for Remand is denied because the jurisdictional amount is met. Defendant's Motion for Judgment on the Pleadings is granted because the insurance policy is void ab initio.

An appropriate Order follows.